Good morning, Your Honors, and may it please the Court, my name is Mark Ebert, and I represent the appellant whose name is, in fact, pronounced DeJarnette, as Your Honor said. He's what, I'm sorry? It is DeJarnette, correct. DeJarnette, okay. Your Honors, this case is really only about one thing, and that is what venue was Mr. DeJarnette required to register in as a sex offender in 2008, and therefore, in what venue was it proper to prosecute him for his failure to register? His initial registration was required to occur in the Northern District of California, was it not? No, I disagree with that, Your Honor, because at the time that the initial registration is specifically defined. It is something that has to happen when you are released, before you are released from prison, or if you get, you know, a probationary sentence within a certain number of days. At the time he was released from prison, SORNA was not yet retroactive. It didn't apply to him at that time. So then the question becomes, what happens when, as the Attorney General's guidelines say, five times, or excuse me, four times, actually, that initial registration is impossible? And for, and that's for people under circumstances such as Mr. DeJarnette. And what happened is, in the guidelines. Well, before you get to the question of possible or not possible, why wasn't initial registration required in the Northern District when the crime was alleged to have occurred in the Northern District, was charged that way, and was prosecuted that way? So in the ordinary course, that would mean that's the initial place of registration. But leaving aside whether absconding makes any difference. Because you say before we get to impossible, but to me that is the actual point. At the time that initial registration was required, it was impossible, because SORNA didn't apply to him then. So then you get into the retroactive set of cases, people that are in Mr. DeJarnette's position, where it's not possible at the time he's released from prison, but SORNA becomes effective on August 1st, 2008. And in the Attorney General's guidelines, at page 38063, they give three examples of this, one of which, example number one, is Mr. DeJarnette's case. And what they say is, it's impossible. We recognize that it's impossible to do initial registration. But in those circumstances, we provide alternatives to initial registration. And that is the point. He was not at the time registered anywhere else. He was not. By the period covered in the indictment, correct? He was not. So there's no superseding place of registration that's occurred. There he was – first of all, he was not charged with failing to update his registration, probably because he didn't have one. He had never registered. He didn't have a registration to update. So the only question is, where is the initial required place? What I'm saying, Your Honor, is that there is no initial, quote, initial, as opposed to to. So he gets to not register? No. That is not what I'm saying. There's two kinds of registration, initial and I guess what I'll call regular. Okay. Where was his initial place in your view? There was no initial place because SORNA did not exist as to him at the time initial. If SORNA existed, what was the initial place where he should register? There wasn't one. He had to register in conformity with SORNA under the Attorney General's guidelines. But that requires him to do an alternative registration, which is in the place he works, which is in the place that he goes to school, or which is in the place that he lives. And at that time, when the law became effective as to him, he lived in Georgia. He did not have an initial registration requirement. He was required to register. But the question is, where was he required to register? Neither SORNA nor the Attorney General's guidelines indicate where he's required to register in his circumstance, and neither SORNA nor the Attorney General's   And the answer is, when the law becomes effective as to him. Mr. Iver, I would have some sympathy for your position, except for the fact that AG's guidelines don't cover this situation. Either is that he put himself in that situation by absconding. Right? No, Your Honor. He put himself in the situation of not complying with his supervised release and California law. Well, to me, not complying with supervised release is not too different from absconding. But he was required to live in California. Yes. And so shouldn't that apply to his or his other? Because he was required to stay in California and not leave without permission, and it's not unfair to require him to register in California? Not under SORNA. He's not required to register in California under SORNA. Remember, at the time. Well, why not? SORNA requires him to, you know, register where he's one of the places where he's residing. And he should have been residing in California. He should have been residing in California. So that's where he should register. And he was brought back to California and he got and served 15 months in prison for the supervised release violation of absconding to Georgia. So he's already been punished for that. As for the other. It's not a matter of punishment for that. It's a matter of, you know, his the requirement that he comply with SORNA. SORNA says you have to register where you're residing, and he's supposed to reside in California. But he wasn't residing in California, and he's still subject. The way to evade the registration requirement is to just to move without authorization. No, Your Honor. That's a violation of supervised release. He was punished for that. The question is what venue was he required to register in under the circumstances. And supervised releasees are covered under the Attorney General's guidelines. Counsel, there's a whole line of cases about people who have absconded from the jurisdiction and where it's a direct criminal appeal and a person is not found where they're supposed to be found. We have often followed the practice of dismissing an appeal. Now, I'm not suggesting we do that here, but I wonder whether there isn't some force to the question that Judge Tashima is asking you where the person is under a legal duty to be in California. What does that do? I think that the Attorney General's guidelines cover that, and they say that if you're under supervision, you have to register, quote, in conformity with SORNA. And since initial registration under the guidelines and under the laws that existed at the time was impossible, that simply required him to register where he lived, where he worked, or where he went to school. This is not about whether he's absconded. He's been punished for that. As a matter of fact, he's been punished for the failure to register under SORNA. He already served the full three years. Most recently, as I understand it, he was arrested in Boston. That's correct. Has he been returned to California? Not yet. He's awaiting return. But he's already served the entire three years for the underlying offense. The question is, what is the proper venue? And I submit and I believe that under the Attorney General's guidelines, where initial registration is temporarily, in time, impossible, that he's only required to register where he lives, where he works, or where he goes to school. And so I think the venue is improper, and I think that because the venue is improper, both the jury instruction and the lack of the jury instruction was wrong as a matter of law, and it was there was simply no sufficient evidence that he had a duty to register in California as stated in the indictment and the jury instructions. You have about a minute and a half if you want to save it. Thank you. I will. Good morning. May it please the Court. My name is Susan Gray on behalf of the United States. The district court correctly instructed the jury in this case that the defendant was required to make his initial registration in the district of conviction, which was the Northern District of California. Now, what is that? A regulation or statute? Your Honor, that was based on the statute itself. And the reason that the government believes that the initial registration should take place in the jurisdiction of conviction and rejects the defendant's argument that section B, that with these timelines, do not in any way affect the initial registration requirement is because his analysis ignores section D of SORNA, section 16913, because that statute recognized that pre-act offenders like Mr. DiGiorni would not be able to register within the time limit set forth in section B. But that statute, 16913d, the subsection, recognized that the sex offenders that Congress wanted sex offenders to pre-enactment of sex offenders to register. And it delegated that authority to make the initial registration requirements of subsection A applicable to pre-act offenders. The fact that pre-actment of sex offenders. Well, you know, that's what we're trying to get at. So in other words, that's kind of a circular argument, you know. The act, SORNA, doesn't cover initial registration of obviously candidate, right, persons convicted before SORNA became effective. Correct. So there's some kind of delegation to the Attorney General to, you know, straighten this out, you know, I want you to, we want you to make sense out of this mess. Your Honor, if I may. So then, just let me finish. And then so the AG issues guidelines. That's correct, Your Honor. And the guidelines say, well, you have to register in accordance with SORNA. And SORNA says nothing about initial registration of somebody who was not convicted before SORNA was passed. It's just a completely circular argument. Well, Your Honor, if I may, section 16913a says that a sex offender must register in initially register in the jurisdiction of conviction. But that can't apply to somebody convicted before SORNA was enacted. That's correct, Your Honor. But then section D, the statute doesn't end there. Section D recognizes that preactive offenders are never going to be able to meet those initial, the timelines. But it does not absolve them from their obligation to comply with section A. So a delegate to the AG, that's what I said. But the AG's regulation is circular. It says those people have to register in accordance with SORNA. And SORNA doesn't require registration for preactive offenders. No, actually, Your Honor, I disagree. SORNA does. Okay. Give me the section in SORNA that requires persons convicted of offenses before SORNA became effective to comply with the initial registration requirement. First of all. What section is that? 1691 16 — I'm sorry, Your Honor. Let me just grab it. 169112 delegates that authority to the AG. That's what I said, to the AG. And if you'll look at section 2C of the Federal — of the Guidelines, which is at 73 Federal Register 38046, it says that applicability — and these are the Guidelines pursuant to the — to Congress's delegated authority to the Attorney General, in which he says they apply to all sex offenders, including those whose convictions predate SORNA's enactment. There — But that's not the end of it. It goes on to say, and they have to register in accordance with SORNA. Correct. And SORNA doesn't say anything about preactive offenders, initial registration. No, Your Honor. That's my whole point. On that same page, the Guidelines go on to note that there are three classes of preactive offenders that remain in the system that SORNA requires compliance with, and they are those who are incarcerated or under supervision. That would be the defendant in this case. Those who are already registered or subject to preexisting sex offender registration requirements under the jurisdiction's law. That would also be Mr. Desjardins, because he'd been ordered to register under California law, and he'd been ordered to register by the district court as a condition of his supervised release. Just point me to a specific regulation that directs them, you know, when and where to register. It is in Section 2C, under retroactivity, under the Guidelines, which is at Federal — 73 Federal Regulations 38046. 38046. Go ahead. 0, 4. The Guidelines go on to direct that these classes, the three classes I just mentioned, are to be registered in conformity with SORNA standards. But the Guidelines don't stop there, Your Honor, and this may be the answer to your question. And that is, it goes on, on 38062, which is Section 9, to, after already saying the SORNA Guidelines apply to pre-enactment sex offenders, particularly those who are on supervised release. It then — What are you looking at, on 38062 under Part Roman 9? 9, which is at Federal Register 73-38062, where it says initial registration. Right. And there, there is a — which, and quite frankly, it quotes almost exactly from subsection A, which says that a sex offender shall register in the district of residence, employment, or where he's a student. But then, if you'll notice, Your Honor, it goes on to say he shall initially register. There's no carve-out, there's no exception for a pre-enactment offender to not register in the jurisdiction of conviction. And if the Guidelines wanted him — wanted to exempt him, that would have been the place to do it. But instead, it says SORNA further provides that for initial registration purposes only, a sex offender — and remember, the Guidelines have just told us that he is a sex — pre-enactment sex offender that the Guidelines apply to — must also register in the jurisdiction in which convicted, if it's different from the jurisdiction of residence. So — Show me where abouts — are you still on page 62, or are you over to 63? I am on — I am now on page 38061, which says where registration is required. Well, I thought we were looking at part 9, and you're now back on 6-1? Part 8. You're in part 8. Now you're back to part 8? Correct. Which, Your Honor, first the Guidelines say that SORNA is applicable to pre-enactment offenders, and that is at 38046, when it discusses retroactivity. And it describes three classes of sex offenders. Right. You don't have to go through that. Okay. Now what? And then we go to section — page 38061, which is Guideline 8, which tells us where registration is required. And the registration that is required is the same for pre-enactment offenders as it is for post-enactment offenders. And as the Court pointed out, the only reason — Now, let me stop right there. A pre — for instance, a pre-enactment — I mean, a post-enactment offender, right? Correct. Convicted here in San Francisco in the Northern District. Suppose that person is, you know, sentenced in Butte, North Carolina, completes the sentence there. They have to come back to San Francisco to register? That is certainly what — if you look at example — Is that the way you read the requirement? Yes. That is the way I read the requirement. How is that person supposed to get, you know, get to San Francisco from North Carolina? Your Honor, the guidelines don't address that specific issue, although I would suggest that in this particular case, on the facts of this particular case, there was no impossibility on August 1, 2008, for Mr. Desjardins to register in the jurisdiction of his conviction or where he was supposed to be. He had been ordered by the court to reside, and the only reason he didn't is because he'd fled. He'd fled that responsibility. He'd been told seven different times, you have an obligation to register. He had three obligations. Number one, under the State of California law. Number two, under the district court's order. And number three, on August 1, 2008, that obligation arose under SORNA. Keep in mind, Your Honor, that SORNA, as this Court recognized in Elkins, creates a Federal duty to register, but it's based the mechanism fulfilling it is through the State registration system, which he already had an obligation to do. Again, Your Honor, referring back to the guidelines, if I might, the subsection of where a defendant is supposed to register, which is in Section 3, Section 8, I apologize, on the next page contains a retroactive section. It's a subsection of initial registration. And there is no cutout, no exemption from the initial registration requirements because of impossibility. Sotomayor, it strikes me that the Attorney General would have been perhaps without authority to exempt these retroactive classes from initial registration in the jurisdiction of conviction. Because subsection A of the statute says, for initial registration purposes, only a sex offender shall also register in the jurisdiction in which convicted. And it goes on to provide some other things. And if Congress says initial registration happens where you're convicted and the carve-out is for time limits, I'm not sure how the Attorney General could make a different rule for what we're calling retroactive purposes for the place of registration as distinct from the time of registration. Exactly, Your Honor. And actually, subsection D recognizes that for pre-enactment offenders, essentially what subsection D does is take the time limits of subsection B out of the equation for pre-enactment offenders. And the Court is right. The Attorney General was delegated the responsibility of prescribing ways and rules for pre-enactment offenders to register, but he did not have the authority to excuse compliance with subsection A. And so the – I see I'm out of time, but I'd like to continue to answer my – the Court's questions. So you may complete your answer, and then unless someone else has further questions, you'll be done. Well, but the question is whether or not, you know, the initial registration requirement can even be applied to somebody who is convicted pre-SORNA. Well, Your Honor, the initial registration requirement, the government's position is, indeed, it is to be applied. The only thing that isn't applied and was recognized by SORNA itself in 16913d is that a pre-enactment offender would not be able to do so within those guidelines. That's all that did, but it did not give him a pass. Quite frankly, Your Honor, the most important thing to look for here is not what it did do, but what it didn't do. And neither SORNA or what it did do. So it's impossible for somebody convicted pre-SORNA to comply with their initial registration requirements, right? That's correct, Your Honor, but, no, only – So how can it apply if it's impossible, you know, to comply with the statute? Let me be clear. He can't comply with the subsection B, the timelines, but – He can't comply with anything. He can't initially register before completing the sentence, because the sentence has been completed, right? Less than three business days after being sentenced, because that's way in the past. How can that person comply? Because, Your Honor, the fact that he can't comply with the time limits of subsection B does not absolve him of complying with subsection A. And the reason that – and subsection D simply takes out for pre-enactment offenders – Well, sure, register and keep the registration correct, but that's different from the initial registration requirement. Yes, they're two – they're essentially, under subsection A, four different registration – We're talking now about the initial registration requirement, right? Pardon me, Your Honor? We're talking about the initial registration requirement. We're also talking about his duty to keep his registration current. Well, is that what he was convicted of, failing to keep the registration current? He was convicted of failing to register. Right. Initially register. And the – So that's a different, you know, a different animal. The jury was instructed that he fail to initially register in the jurisdiction of conviction. They were also instructed that he fail to keep current or update the jurisdiction – the – his registration in an involved jurisdiction. Was it all in a single count? Yes, it was. So you don't know what she was convicted of? No, but that issue was not raised below, Your Honor, in terms of – All right. Thank you, counsel. I'll try and answer both of Your Honor's questions in what little time I have. First of all, he was convicted of failure to register, not failure to keep his registration current. There was no current – prior registration to keep current, and he wasn't charged with that, and the jury instructions don't charge him with that either. As to Judge Graber's question, I would respectfully disagree that the Attorney General has no authority to exempt him from initial registration. He wasn't exempted by the Attorney General. He was exempted by the fact that it was temporally impossible at the time that he was released. But that – see, there – it seems to me that you're melding two entirely separate things that Congress kept separate. One could imagine them not having kept it separate. But subsection A says everybody registers and the initial registration shall occur in the place of conviction. End of subsection A. Subsection B has to do with when you do it, and the fact that you can't do it when subsection B tells you says nothing about whether you could do it later. No, I disagree, because what sub – the timelines are a part of the statute. They are, but they're a different section of the statute. Right. We have to assume that Congress did that for a reason. But the Attorney General doesn't have the authority to overrule any part of Congress's statute. Well, he didn't because subsection D says they can look at subsection B, which is the timelines. It doesn't say he can overrule subsection A. It says he can deal with the time problem. I timed it up. I just want to point out in answer to your question, the relevant part of the Attorney General's guidelines are not what my opposing counsel has cited. They are page 38063. Everything that our argument is based on in terms of the Attorney General's guidelines is on that page. They say four times that initial registration is impossible. They say for people in this situation, they say we are providing an alternative for those people, and those alternatives are to register in conformance with SORNA. And those guidelines didn't come into effect until 2008 when Mr. Desjardins was living in Georgia. Thank you, counsel. And he was not excused. He was simply not physically able to go back in time and register before release from prison, which is when initial registration occurs. Thank you. Thank you, counsel. We appreciate the arguments of both parties in this very interesting case. The case is submitted.
judges: Noonan, Tashima, Graber